**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth Joseph HILL, Defendant–**
**Appellant.**

**No. 95–5246.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17, 1995.

Decided March 28, 1996.

Christopher E. Cotten, Asst. U.S. Attorney (argued and briefed), Memphis, TN, for Plaintiff-Appellee.

Daniel Johnson (argued and briefed), Johnson & Baggett, Memphis, TN, for Defendant-Appellant.

Before: BATCHELDER and MOORE, Circuit Judges; ENSLEN, Chief District Judge.[*]

KAREN NELSON MOORE, Circuit Judge.

Appellant Kenneth Joseph Hill pleaded guilty to one count of possession with intent to distribute cocaine base pursuant to 21

---

[*] The Honorable Richard A. Enslen, Chief United States District Judge for the Western District of Michigan, sitting by designation.

U.S.C. § 841(a)(1) and one count of possession of a firearm as a felon pursuant to 18 U.S.C. § 922(g). Hill appeals several aspects of his sentence under the United States Sentencing Guidelines ("Sentencing Guidelines"). His primary argument is that the district court erred by including as "relevant conduct" under section 1B1.3 of the Sentencing Guidelines a drug transaction that preceded the offense of conviction by approximately nineteen months and had been charged in a previous indictment. As a corollary argument, Hill contends that the district court also erred by increasing his criminal history category under section 4A1.1(e), which provides for a two-point increase in a defendant's criminal history score if the defendant committed the offense of conviction (including any relevant conduct) less than two years after release from imprisonment on a sentence of at least sixty days. *See* U.S.S.G. § 4A1.1(e), application note 5. Since the district court's finding was premised on the date of the relevant conduct, Hill argues that if we hold that the relevant conduct decision was erroneous, we must also hold that the district court erred by increasing Hill's criminal history score under section 4A1.1(e).

Hill also appeals the district court's decision to enhance his sentence for possession of a firearm pursuant to section 2D1.1 and for obstruction of justice pursuant to section 3C1.1. In addition, Hill claims that the district court erred by refusing to reduce his offense level for acceptance of responsibility pursuant to section 3E1.1 or grant his request for a downward departure pursuant to section 4A1.3. Finally, Hill challenges the district court's factual finding regarding the weight of the cocaine base and the constitutionality of the sentencing regime under 21 U.S.C. § 841(b), which apportions the penalty for an offense involving one gram of cocaine base as if it were one hundred grams of cocaine powder.

Because we agree with Hill that the district court's "relevant conduct" finding and concomitant increase in Hill's criminal history category are erroneous, we VACATE Hill's sentence and REMAND for resentencing. Finding Hill's remaining assignments of error to be without merit, we AFFIRM the district court's decision in all other respects.

## I. BACKGROUND

A grand jury indicted Hill for drug-related offenses committed on or about May 18, 1993. Counts one and two charged Hill with possession with intent to distribute approximately 20.8 grams of cocaine base (commonly known as "crack") and 52.9 grams of cocaine, respectively, in violation of 21 U.S.C. § 841(a)(1). Count three charged Hill with possession of a firearm in violation of 18 U.S.C. § 922(g).

Pursuant to a written plea agreement, Hill pleaded guilty to counts one and three, and the government agreed to dismiss count two of the indictment. The government also agreed to dismiss its appeal of the district court's grant of Hill's motion to suppress in a 1991 case in which Hill had been indicted for possession with intent to distribute approximately 75.4 grams of cocaine base. Nonetheless, the district court included the quantity of cocaine base from the 1991 case as "relevant conduct" in determining Hill's sentence in the instant case.

## II. ANALYSIS

### A. Relevant Conduct Under U.S.S.G. § 1B1.3

Hill argues that the district court erred by including 75.4 grams of cocaine base charged in the 1991 indictment as "relevant conduct" under section 1B1.3 of the Sentencing Guidelines because he claims that the 1991 drug transaction and the 1993 conviction were isolated incidents with no common victim, accomplice, purpose, or modus operandi. Therefore, Hill challenges the district court's finding that since both offenses involved possession with intent to distribute cocaine base, the 1991 transaction constitutes "relevant conduct."

The government asks this court to infer that Hill made his living as a crack dealer because he had a prior conviction for selling crack cocaine in December 1988 and he has not had legitimate employment since 1981. But the government did not introduce evidence at the sentencing hearing to support a

finding that Hill sold crack regularly, and the district court made no such finding. Therefore, this court will not presume that Hill made his living as a crack dealer during his period of unemployment. Rather, we analyze the relevant conduct issue as two instances, approximately nineteen months apart, of possession with intent to distribute cocaine base.

■ When reviewing a district court's sentencing decisions, this court will disturb the underlying factual findings only if they are clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir.1991). Furthermore, the court of appeals must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). However, "[w]hether the facts found by the district court warrant the application of a particular guideline provision is a legal question and is to be reviewed de novo by the appellate court." *United States v. Partington,* 21 F.3d 714, 717 (6th Cir.1994). Thus, in analyzing whether the 1991 drug transaction should count as relevant conduct, we review the district court's determination de novo.

■ At the outset we recognize the apparent unfairness in the district court's relevant conduct determination, which effectively nullifies Hill's plea agreement by imposing the same sentence Hill would have received had he not struck a deal with the government to abandon the appeal of the grant of his motion to suppress in the 1991 case. At least with respect to his period of imprisonment, Hill could not have done worse by awaiting the outcome of the government's appeal.[1] But Hill acknowledges that it is well settled in this circuit that conduct forming the basis for counts dismissed pursuant to a plea agreement may be considered in determining a defendant's base offense level under the

Sentencing Guidelines. *See, e.g.,* U.S.S.G. § 1B1.3, background ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."); *Partington,* 21 F.3d at 717 ("Conduct which forms the basis for counts dismissed pursuant to a plea bargain may be considered in determining the base offense level under the guidelines."); *United States v. Ykema,* 887 F.2d 697, 699–700 (6th Cir. 1989) (rejecting appellant's contention that the government violated the plea agreement because the appellant received the same sentence he would have received had there been no plea agreement), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). We caution criminal defense attorneys to counsel their clients accordingly. *See id.* at 699. In light of our precedent, we must consider whether the 1991 offense constitutes "relevant conduct" without regard to Hill's plea agreement.

The 1991 drug transaction may be included in Hill's offense level as "relevant conduct" only if it is "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). To qualify as part of a "common scheme or plan" under the "relevant conduct" guideline, the offenses "must be substantially connected to each other by at least óne common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" U.S.S.G. § 1B1.3, application note 9(A). If offenses do not qualify as part of a common scheme or plan, offenses are nonetheless considered the "same course of conduct" if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, application note 9(B).[2] The three factors relevant to

---

1. On the other hand, even if the government had lost its appeal on the motion to suppress, the conduct at issue in the previous indictment could arguably have been included in Hill's offense level anyway because under Sixth Circuit precedent suppressed evidence may be considered relevant conduct. *United States v. Jenkins,* 4 F.3d 1338, 1344–45 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994).

2. Application note 9(B) was amended in the 1994 Sentencing Guidelines. The probation officer used the 1993 Sentencing Guidelines to compute Hill's sentence because his sentencing hearing began in October 1994, before the 1994 guidelines became effective. Since the district court continued Hill's sentencing hearing until January 1995 at the request of both parties, the 1994 Sentencing Guidelines apply because they were in effect at the time Hill's sentence was imposed.

determining whether offenses are sufficiently related to constitute the "same course of conduct" include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* The commentary requires courts to balance these factors such that "when one of [these] factors is absent, a stronger presence of at least one of the other factors is required." *Id.* In an apropos illustration of this sliding scale approach, the commentary explains that "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." *Id.* Furthermore, the "nature of the offenses" may also be considered to the extent pertinent to the court's analysis of the three factors. *Id.* (citing as an example the failure to file a tax return for three consecutive years because such returns are only required at yearly intervals).

■ Section 1B1.3(a)(2) applies only to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d) requires "grouping" of "counts involving substantially the same harm," which includes drug offenses because the offense level for drug offenses is based largely on the quantity of the substance involved. *See* U.S.S.G. § 3D1.2(d) (explicitly including section 2D1.1, which covers drug trafficking, among the guideline sections to be grouped). By design, Section 1B1.3(a)(2) takes account of offenses that "involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." U.S.S.G. § 1B1.3, background. Implicit in this purpose is the limitation that "when illegal conduct does exist in 'discrete, identifiable units' apart from the offense of convic-

tion, the Guidelines anticipate a separate charge for such conduct." *United States v. Hahn,* 960 F.2d 903, 909 (9th Cir.1992), *appeal after remand,* 993 F.2d 885 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 394, 126 L.Ed.2d 342 (1993). *See also United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir. 1993); *United States v. Mullins,* 971 F.2d 1138, 1143 (4th Cir.1992). The guideline only applies if "there are distinctive similarities between the offense of conviction and the remote conduct" and cannot be used to sentence a defendant based on "isolated, unrelated events that happen only to be similar in kind." *Sykes,* 7 F.3d at 1336.

Several circuit courts have distinguished between the terms "same course of conduct" and "common scheme or plan" by recognizing that a "common scheme or plan" requires that acts "be connected together by common participants or by an overall scheme" whereas the "same course of conduct" concept looks to "whether the defendant repeats the same type of criminal activity over time." *United States v. Silkowski,* 32 F.3d 682, 687 (2d Cir.1994) (quoting *United States v. Perdomo,* 927 F.2d 111, 115 (2d Cir.1991) (internal citations omitted)); *United States v. Sanders,* 982 F.2d 4, 9 (1st Cir.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). To determine whether a prior offense constitutes the "same course of conduct," these courts focus on "whether defendant has engaged in an identifiable 'behavior pattern' ... of specified criminal activity." *Perdomo,* 927 F.2d at 115 (quoting *Santiago,* 906 F.2d at 872). *See also United States v. Richards,* 27 F.3d 465, 468 (10th Cir.1994).

■ We agree that the terms "same course of conduct" and "common scheme or plan" do not mean exactly the same thing. It is a basic principle of statutory construc-

---

18 U.S.C. § 3553(a)(4); *United States v. Cseplo,* 42 F.3d 360, 362 (6th Cir.1994) (citing U.S.S.G. § 1B1.11, which provides that the district court must use the Guidelines Manual in effect at the time of sentencing unless doing so would violate the ex post facto clause in Article I, section 9 of the United States Constitution). Furthermore, since the amendment merely clarifies the operation of § 1B1.3, we would consider the clarifications even if we applied the 1993 version of the guidelines. *See* Amendment no. 503 in Appendix

C of 1994 Sentencing Guidelines; U.S.S.G. § 1B1.11(b)(2) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."); *United States v. Luster,* 889 F.2d 1523, 1529 (6th Cir.1989) (noting that amendments to clarify the existing guideline "should be given substantial weight in determining the meaning of the existing guideline").

tion that terms joined by the disjunctive "or" must have different meanings because otherwise the statute or provision would be redundant. *See United States v. Lawrence,* 915 F.2d 402, 407 (8th Cir.1990) (citing *Garcia v. United States,* 469 U.S. 70, 73, 105 S.Ct. 479, 481, 83 L.Ed.2d 472 (1984) ("Canons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings.")). Nonetheless, we find that there is considerable overlap between the two terms. *See* U.S.S.G. § 1B1.3, application note 9 (noting that the terms are "two closely related concepts"). For example, although not essential to a finding that a prior offense was part of the "same course of conduct" as the offense of conviction, the same factors listed as supporting a finding of a "common scheme or plan", which include common victims, common offenders, common purpose, or similar modus operandi, may also bolster the similarity factor in analyzing whether a prior offense is part of the "same course of conduct" as the offense of conviction. In fact, it is difficult to conceive of other factors that could be used to support a finding that two offenses were similar.

█ When considering the similarity factor, the conduct should not be considered at a level of generality that would render worthless the relevant conduct analysis. In *United States v. Maxwell,* 34 F.3d 1006 (11th Cir.1994), the Eleventh Circuit reversed the district court's determination that a sale of cocaine more than a year before the offense of conviction for a dilaudid distribution scheme constituted relevant conduct. *Id.* at 1011–12. Finding the offenses to be "temporally remote," the court concluded that the two offenses did not "constitute a single course of conduct simply because they both involve[d] drug distribution." *Id.* at 1011. The court reasoned that describing the defendant's conduct " 'at such a level of generality [would] eviscerate the evaluation of whether uncharged criminal activity is part of the "same course of conduct or common scheme or plan" as the offense of conviction.' " *Id.* (quoting *Mullins,* 971 F.2d at 1145).

█ We also recognize that a lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture "on hold." *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993). *See also United States v. Nunez,* 958 F.2d 196, 198 (7th Cir.), *cert. denied,* 506 U.S. 857, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992) (finding that, where two-year lapse between uncharged drug sales and the offense of conviction resulted in part because the buyer had been incarcerated, relevant conduct finding was not clearly erroneous). For example, in *Cedano–Rojas,* the prior drug transactions at issue occurred during an eight month period approximately two years before the offense of conviction. *Cedano–Rojas,* 999 F.2d at 1180. Although the Seventh Circuit warned that courts "must be cautious and exacting in permitting such relatively stale dealings to be included in the same course of conduct as the offense of conviction," it was satisfied that the prior transactions were sufficiently related because the two-year gap could be explained by the defendant's loss of his supplier and difficulty in obtaining cocaine. Furthermore, the similarities between the offenses buttressed the court's conclusion: each occurred in Chicago and involved substantial amounts of cocaine and similar modus operandi. *Id.* at 1181.

In reviewing whether prior offenses constitute part of a "common scheme or plan" or the "same course of conduct" as the offense of conviction, the Sixth Circuit has never articulated a precise time bar after which conduct becomes irrelevant for sentencing purposes. In *United States v. Kappes,* 936 F.2d 227 (6th Cir.1991), this court held that where two offenses involving false statements occurred six years apart, the prior offense could not be "relevant conduct" because, although similar, it was too remote temporally. *Id.* at 230–31. In contrast, this court found in *United States v. Miller,* 910 F.2d 1321 (6th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991), that drugs distributed by a defendant once a week over a twenty-month period were properly counted as "relevant conduct" even though the defendant was only charged

with a conspiracy encompassing three months of that period. *Id.* at 1327. Similarly, in *United States v. Nichols,* 979 F.2d 402 (6th Cir.1992), *aff'd on other grounds,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), the court included as relevant conduct a drug purchase that preceded the offense of conviction by three months and involved the same conspirators, the same undercover agents, the same drug, and the same objective of purchasing kilogram quantities of cocaine. *Id.* at 413–14.

Other circuits have also found that the Sentencing Guidelines impose no precise amount of time after which prior conduct is too remote to be considered "relevant conduct" under section 1B1.3. For example, in *United States v. Santiago,* 906 F.2d 867 (2d Cir.1990), the Second Circuit stated that "whether two or more transactions may be considered part of the same course of conduct is not determined by temporal proximity alone," and it affirmed the district court's "relevant conduct" finding with respect to conduct that occurred eight months before the offense of conviction at the same place and involving the same modus operandi as twelve prior sales. *Id.* at 872. However, the *Santiago* court specifically noted that eight months "is considerably longer than the periods involved in most of [its] prior cases construing the Guidelines, especially those focusing on offenses other than conspiracy." *Id.* *See also United States v. Moore,* 927 F.2d 825, 828 (5th Cir.1991) (stating that the "guidelines impose no temporal restrictions on validly-obtained, relevant evidence" and rejecting appellant's argument that conduct seven months before the offense of conviction was too remote), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991).

Although there is no bright-line rule defining what constitutes "the same course of conduct or common scheme or plan as the offense of conviction," the guidelines prescribe a sliding scale approach, i.e., where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor. *See Hahn,* 960 F.2d at 911 ("When one component is absent, however, courts must look for a stronger presence of at least one of the other compo-

nents."). In *Hahn,* the Ninth Circuit held that a five-month gap between two instances of "conduct" was "relatively remote" and would require a stronger showing of similarity and regularity in order to constitute relevant conduct. *Hahn,* 960 F.2d at 910–11 ("Regularity is wanting in the case of a solitary, temporally remote event, and therefore such an event cannot constitute relevant conduct without a strong showing of substantial similarity."). *See also Sykes,* 7 F.3d at 1337 (reversing the district court's finding that the fraudulent credit application underlying a dismissed count, which occurred fourteen months after the offense of conviction, constituted relevant conduct); *Mullins,* 971 F.2d at 1144 (finding temporal proximity "extremely weak" where uncharged conduct occurred six months prior to offense of conviction); *United States v. Jones,* 948 F.2d 732, 737–38 (D.C.Cir.1991) (ruling that embezzlement from an art gallery that occurred over one year before embezzlement from a mailbag was not part of same course of conduct or common plan).

Generally, where two isolated drug transactions are separated by more than one year, a "relevant conduct" finding may not be premised on the sole similarity that both transactions involved the same type of drug. Analyzing the factors in the instant case, we find that temporal proximity is extremely weak in that nineteen months is an exceedingly long lapse between offenses. Regularity is completely absent here, for the government proved only one prior offense. Therefore, the government was required to compensate for the weakness of the temporal and regularity factors by presenting substantially stronger proof of similarity. The government failed to do so. Not only is the type of drug the only similarity between the two drug transactions, but the quantities involved in each deal differ substantially. The 1991 offense involved 75.4 grams of cocaine base whereas the offense of conviction involved only 20.8 grams of the same substance. Moreover, the offense of conviction involved a combination of crack and powder cocaine and possession of a firearm, which were not present in the 1991 offense. In addition, the government has not argued that the two transactions occurred in the

same location, or involved the same supplier, buyer, or other participants. Nor has the government suggested any reason to explain the lapse between the first transaction and the second, except to imply that Hill must have been selling drugs to support himself during this period and simply did not get caught. We rejected that implication above, because the government pointed to no evidentiary support. Accordingly, we hold that because the prior conduct consisted of one drug transaction that occurred more than a year before the offense of conviction and because the only similarity between the two offenses is that both involved possession with intent to distribute cocaine base, the district court erred by finding that the 1991 drug transaction constitutes "relevant conduct." [3]

### B. Criminal History Score Increase Under U.S.S.G. § 4A1.1(e)

Since the district court erred by including the 1991 drug transaction as "relevant conduct," the district court's finding that the instant offense occurred within two years of Hill's parole in July 1990, a finding that is premised on the relevant conduct finding, is also erroneous. Section 4A1.1(e) of the Sentencing Guidelines provides for a two-point increase to a defendant's criminal history score "if the defendant committed the instant offense less than two years after release from imprisonment on a sentence" of at least sixty days. The points are to be added if "the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) less than two years following release from confinement on a sentence counted under § 4A1.1(a) or (b)." U.S.S.G. § 4A1.1(a), application note 5. Thus, the district court increased Hill's criminal history score pursuant to section 4A1.1 because it found that Hill's 1991 drug transaction constituted "relevant conduct." In light of our holding on the relevant conduct issue, the increase under section 4A1.1 is not warranted because Hill committed the instant offense on or about May 18, 1993, which is more than two years after his July 1990 parole date.

### C. Enhancement for Possession of a Firearm Under U.S.S.G. § 2D1.1

Hill also argues that the district court erred by enhancing his offense level for possession of a firearm under section 2D1.1(b)(1) of the Sentencing Guidelines, which provides for a two-level increase in a drug trafficking offense "[i]f a dangerous weapon (including a firearm) was possessed." This enhancement applies

> if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, application note 3. To apply the enhancement under section 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Id.* (citation omitted). "Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense." *Id.* The burden then shifts to the defendant to show that "it is clearly improbable that the weapon was connected to the offense." *Id.* (citing U.S.S.G. § 2D1.1, application note 3).

When Hill was arrested, officers found drugs in the bathroom and a semi-automatic pistol in the top drawer of a dresser in the master bedroom along with three magazines and approximately fifteen live rounds. However, Hill argues that the enhancement for possession of a firearm should not apply because his girlfriend, Wanda Carruthers, with whom Hill lived, testified that someone else owned the gun and that Carruthers kept it in the apartment for her

---

3. Because we hold that the 1991 offense is not relevant conduct, we need not address Hill's contention that the government did not prove the allegations in the 1991 indictment by a preponderance of the evidence.

protection. Hill cited *United States v. Peters,* 15 F.3d 540 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 219, 130 L.Ed.2d 146 (1994), where the Sixth Circuit affirmed the district court's decision not to apply the enhancement even though police found a .38 caliber pistol and a fully-loaded magazine in a zippered leather pouch in a defendant's dresser drawer, just below a plastic bag containing crack cocaine sitting on top of the dresser. *Id.* at 542, 546. However, in *Peters,* the government appealed the section 2D1.1(b)(1) issue, and this court deferred to the district court's findings, which were based upon a consideration of "the evidence heard at trial as a whole," including the facts that led to the defendant's acquittal on the charge of using and carrying a firearm in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1). *Id.* at 543.[4]

In contrast, it is the defendant who appeals the district court's decision to apply the firearm enhancement in the instant case, and the defendant pleaded guilty to a charge of knowingly possessing a firearm as a felon under 18 U.S.C. § 922(g). The district court found that it was "not clearly improbable that the weapon was connected with the offense" because even if the gun was in the house for Carruthers's protection, the gun could be jointly possessed and was located in a residence to which Hill had full access and where drugs were found. *See, e.g., United States v. Calhoun,* 49 F.3d 231, 236–37 (6th Cir.1995) (defendant failed to show that it was "clearly improbable" the weapon was connected to the offense where the gun seized from her apartment was a loaded twenty gauge shotgun, which was found under the bed and therefore was easily accessi-

ble); *Sanchez,* 928 F.2d at 1460 (constructive possession established when defendant leased apartment where police found a .357 magnum during a search that also revealed plastic bags containing cocaine).[5] Hill has failed to demonstrate that the district court clearly erred by finding that it was "not clearly improbable that the weapon was possessed in connection with the offense." Therefore, the district court did not err by imposing the enhancement for possession of a firearm under section 2D1.1(b)(1).

## D. Obstruction of Justice Under U.S.S.G. § 3C1.1

The district court increased Hill's sentence for obstruction of justice because Hill missed a court appearance, and after the court issued a warrant, Hill "tried to hide from the arresting officers." Section 3C1.1 of the Sentencing Guidelines provides that the defendant's offense level should be increased by two levels "[i]f the defendant willfully obstructed or impeded ... the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The application notes to section 3C1.1 include among the examples of the types of conduct warranting this enhancement "willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1, application note 3(e). Hill attempted to explain his failure to appear in court when he testified at the sentencing hearing, but the district court found his behavior inexcusable because "[h]e was arrested in a circumstance where he was attempting not to be found." (J.A. at 132.) We cannot say that this finding was clearly erroneous.

---

4. An acquittal under section 924(c) does not preclude the district court from applying the enhancement under U.S.S.G. § 2D1.1(b)(1) because the substantive standard and the burden of proof at sentencing differ. *See, e.g., Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995).

5. Contrast *United States v. Zimmer,* 14 F.3d 286, 290–91 (6th Cir.1994) (district court erred by enhancing sentence for possession of a weapon under section 2D1.1 where the defendant, who lived in a rural area, showed by unrefuted testimony that three rifles found on the premises were for hunting, rifle found in the bathroom had been used the day before the search to kill a

deer from the bathroom window, the rifles were found in the main part of the house while the marijuana plants were grown in a "secret room" in the basement, and the defendant had been charged only with a marijuana manufacturing operation, not "drug dealing") and *United States v. Garner,* 940 F.2d 172, 175–76 (6th Cir.1991) (finding that the defendant showed it was clearly improbable that a gun was connected with his drug trafficking offense because the gun was a single shot antique Derringer, which was described as a collector's piece and is not a type of gun normally associated with drug activity, that the defendant kept unloaded in a locked safe).

### E. Acceptance of Responsibility Under U.S.S.G. § 3E1.1

 The district court refused to reduce Hill's offense level for acceptance of responsibility pursuant to section 3E1.1 of the Sentencing Guidelines because it found that Hill "committed a federal offense while on bond from another federal offense, and he attempted to obstruct justice by failing to appear for the scheduled hearing." The defendant bears the burden of demonstrating acceptance of responsibility. *United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir.1995). "Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge is entitled to great deference on review." *United States v. Donathan*, 65 F.3d 537, 541–42 (6th Cir.1995) (citing U.S.S.G. § 3E1.1, application note 5). Therefore, we "review the sentencing court's determination only for clear error." *Donathan*, 65 F.3d at 542.

Section 3E1.1(a) allows a court to reduce a defendant's sentence if he "clearly demonstrates acceptance of responsibility for his offense." A "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, application note 3. Moreover, although it is not dispositive, "[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, application note 4.

Hill argues that if we hold that the district court erred by enhancing his sentence for obstructing justice under U.S.S.G. § 3C1.1, we must also hold that the district court's ruling on acceptance of responsibility is clearly erroneous. Because the obstruction of justice enhancement was not clearly erroneous, we reject Hill's argument. We hold that the district court did not clearly err by refusing to reduce Hill's sentence for acceptance of responsibility.

### F. Downward Departure Under U.S.S.G. § 4A1.3

 Hill further claims that the district court erred by refusing to find pursuant to section 4A1.3 of the Sentencing Guidelines that Hill's criminal history category over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes. "A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. § 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range." *United States v. Brannon*, 7 F.3d 516, 521–22 (6th Cir.1993) (rejecting defendant's contention that the district court should have departed under section 4A1.3). In the instant case, Hill does not claim that the district court improperly computed his criminal history points or did not understand that it had discretion to depart from Hill's criminal history category. In fact, the district court clearly understood its discretion to depart since it explicitly found that Hill's criminal history category did not over-represent the seriousness of his criminal activities based on the number and nature of Hill's prior offenses. Hill had been convicted of one felony offense and six misdemeanor offenses, including possession of controlled substances, assault and battery, possession of drug paraphernalia, and selling controlled substances. (J.A. at 127, 131). Thus, we hold that Hill's section 4A1.3 argument is not cognizable on appeal.

### G. Weight of the Cocaine Base

Hill argues that the district court committed clear error by finding that the cocaine at issue weighed 20.8 grams. When the government's chemist initially weighed the cocaine base relating to count one, it weighed 20.8 grams. Subsequently, at the request of Hill's attorney, another chemist reweighed the same cocaine base and found it weighed 18.6 grams. The chemist who performed the second weighing testified at the sentencing hearing that 0.8 grams of the cocaine base had been removed as a sample for testing purposes and that the atmospheric conditions in the laboratory where the cocaine base was stored likely caused it to decrease in weight.

The government bears the burden of proving, by a preponderance of the evidence, the weight of any drugs for sentencing purposes. *United States v. Clemons,* 999 F.2d 154, 156 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 671 (1994). On review, a district court's factual findings regarding the amount of drugs for which a defendant will be held accountable must stand unless it is clearly erroneous. *United States v. Brannon,* 7 F.3d at 520. A district court must err on the side of caution when choosing between a number of plausible estimates of drug quantity. *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), *and cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541 (1990), *and cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). Nonetheless, we hold that the district court did not clearly err by using the weight obtained from the first weighing of the cocaine base since it would be reasonable to conclude, based on the chemist's explanation of the discrepancy, that the initial weighing is likely to be more accurate.

### H. Constitutionality of the Distinction Between Cocaine Base and Powder Cocaine for Sentencing Purposes under 21 U.S.C. § 841(b)

Hill challenges the constitutionality of the sentencing regime under 21 U.S.C. § 841(b), which provides that an offense involving one gram of cocaine base carries the same penalty as an offense involving one hundred grams of cocaine powder. He claims that the one hundred to one ratio violates the Eighth Amendment prohibition against cruel and unusual punishment and the Fifth Amendment guarantee of equal protection because it disproportionately discriminates on the basis of race. We review de novo a defendant's challenge to his or her sentence on constitutional grounds. *United States v. Lloyd,* 10 F.3d 1197, 1220 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1569, 128 L.Ed.2d 213 (1994), *and cert. denied,* —— U.S. ——, 114 S.Ct. 2172, 128 L.Ed.2d 893 (1994), *and cert. denied,* —— U.S. ——, 115 S.Ct. 219, 130 L.Ed.2d 147 (1994).

Hill's constitutional challenge is barred by controlling Sixth Circuit precedent.[6] This circuit has repeatedly found that the challenged provision of section 841(b) does not violate equal protection guarantees under the Fifth Amendment. *E.g., United States v. Lloyd,* 10 F.3d at 1220; *United States v. Reece,* 994 F.2d 277, 278–79 (6th Cir.1993) (per curiam); *United States v. Tinker,* 985 F.2d 241, 242 (6th Cir.1992) (per curiam), *cert. denied,* 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993); *United States v. Williams,* 962 F.2d 1218, 1227 (6th Cir.), *cert. denied,* 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). Furthermore, the Sixth Circuit has consistently rejected Eighth Amendment challenges to section 841(b). *United States v. Avant,* 907 F.2d 623, 626–27 (6th Cir.1990); *United States v. Levy,* 904 F.2d 1026, 1033 (6th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). Thus, in view of our binding precedent, we must reject Hill's challenge to the constitutionality of the harsher penalties

---

**6.** Hill cites two district court decisions as "persuasive authority" to support his argument that section 841(b) is unconstitutional. *See United States v. Davis,* 864 F.Supp. 1303, 1309 (N.D.Ga. 1994) (holding that no rational basis exists for different penalties for cocaine and crack cocaine since "it is clear beyond doubt that all forms of cocaine are equally smokeable and, therefore, equally dangerous"); *United States v. Walls,* 841 F.Supp. 24, 31–33 (D.D.C.1994) (rejecting contention that section 841(b) distinction between crack and powder cocaine violates equal protection guarantees and amounts to cruel and unusual punishment but finding the punishment violative of the Eighth Amendment as applied to the defendants because undercover agents demanded

that they cook powder cocaine to convert it to crack), *aff'd in part and remanded in part,* 70 F.3d 1323, 1330–31 (D.C.Cir.1995) (rejecting the district court's Eighth Amendment "as applied" analysis). However, Hill's attorney omits any reference to controlling Sixth Circuit precedent. We remind Hill's attorney that "[a] lawyer has a duty to cite controlling adverse authority to the court." *In re Mosher,* 25 F.3d 397, 401–02 (6th Cir.1994) (citing Model Code of Professional Responsibility EC 7–23; Model Code of Professional Responsibility DR 7–106(B)(1); Model Rule of Professional Conduct Rule 3.3(a)(3)). *See also* Rule 32(b) of the Rules of the United States Court of Appeals for the Sixth Circuit.

imposed for offenses involving cocaine base compared to those involving powder cocaine.[7]

## III. CONCLUSION

Accordingly, we VACATE Hill's sentence because we hold that the district court erred by including Hill's 1991 drug transaction as "relevant conduct" pursuant to section 3B1.1 and by increasing Hill's criminal history category pursuant to section 4A1.1. Therefore, we REMAND for resentencing with respect to these issues but AFFIRM the district court's decision in all other respects.

**7.** We note that the Supreme Court has granted certiorari in a Ninth Circuit case involving an equal protection challenge to section 841(b). *See* *United States v. Armstrong,* 48 F.3d 1508 (9th Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995).