**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pamela LANGSTON (Case No. 01–6380) and Marshall F. Troutman (Case No. 02–5008), Defendants–Appellants.**

Nos. 01–6380, 02–5008.

United States Court of Appeals,
Sixth Circuit.

Oct. 31, 2002.

Before SILER and DAUGHTREY, Circuit Judges; and ALDRICH, District

Judge.*

## ORDER

These are two individual appeals from separate judgment and commitment orders in a criminal prosecution that have been consolidated for submission. The parties have agreed to waive oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2001, Pamela D. Langston, Marshall F. Troutman, and five other individuals were named in a multiple-count indictment for their roles in a conspiracy to manufacture and distribute methamphetamine. The district court eventually accepted pleas from Langston and Troutman and found each of them guilty of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846. The court sentenced Langston to a sixty-three month term of imprisonment with a three year period of supervised release; Troutman drew a fifty-seven month prison term and a three year period of supervised release. Both parties took a direct appeal from their respective judgment and commitment orders and the appeals have been consolidated for submission. Langston's appeal has been docketed in this court as Case No. 01–6380 and Troutman's appeal has been docketed as Case No. 02–5008.

Tennessee law enforcement officials were contacted in July 2000 by the mother of Billy Salmon, an indicted co-conspirator, who advised the officers that her son was "making dope" in her home. Salmon then telephoned Langston at her residence, told her what had happened, and informed her that he and Harvey were coming over to her residence. Officers found corroborating evidence of drug manufacture at the Salmon residence and sought out Salmon and another indicted co-conspirator, Jimmy Harvey, at the residence of appellants Langston and Troutman. The officers discovered Salmon's vehicle there and found many items used in the manufacture of methamphetamine in a series of valid consent and "plain view" searches of the vehicle, the residence and an outbuilding. Among the items seized from the vehicle that are of particular relevance to Langston's appeal were 1,132 tablets of pseudoephedrine, the sentencing equivalent of 186 grams of methamphetamine mixture. Langston was present at the home of indicted co-conspirator Tommie Lee Eakins eight days later when officers executed a search warrant at that address. The officers found small amounts of methamphetamine in the residence and $1,022 on Langston.

Langston thereafter appeared before a grand jury in September 2000 and admitted to using methamphetamine with the indicted co-conspirators and to aiding them in exchange for methamphetamine. Langston's involvement with the methamphetamine conspirators did not end, however, with her grand jury testimony. She was subsequently found in a car with Harvey and some methamphetamine and officers found a laundry list of methamphetamine precursor chemicals, manufacturing materials, and a .22 caliber handgun in Langston's bedroom during a January 2001 search of the Langston/Troutman residence.

Three months after being named in the indictment, Langston and Troutman agreed to plead guilty to one count of conspiracy to manufacture methamphetamine. Langston admitted to having tak-

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

en part in every aspect of the conspiracy, from using methamphetamine to aiding in its manufacture and to permitting her residence to be used as a methamphetamine laboratory. Troutman was the last of the indicted conspirators to agree to plead guilty and he cooperated with the government's investigation and prosecution of his co-conspirators as well as other suspects. The district court accepted the pleas and set both sentencing proceedings over for preparation of presentence reports.

The parties agreed at sentencing that Troutman's guideline sentencing range was seventy to eight-seven months. The district court had before it a government motion seeking a downward departure from this range for Troutman pursuant to USSG § 5K1.1 in recognition of his cooperation. The government summarized for the court the basis for the motion, including 1) Troutman's plea to the indictment, 2) the truthful nature of his information to the government, 3) his willingness to testify against his co-conspirators, and 4) the role Troutman's information and his willingness to testify played in obtaining an indictment against two other defendants. Counsel for the United States articulated the preceding at sentencing and the district court essentially adopted the motion, without objection. The district court then imposed upon Troutman a fifty-seven month term of imprisonment, a sentence that was thirteen months below the agreed-upon guideline range minimum.

Langston's sentencing process was marked by two fundamental disagreements over the calculation of the base offense level. The pre-sentence report contained a recommendation that Langston should be held accountable for the 186 grams of methamphetamine equivalent found in Salmon's vehicle when it was parked at Langston's residence and searched in July 2000. Langston's counsel objected to the inclusion of this 186 grams of methamphetamine on the ground that it was not reasonably foreseeable to her that Salmon would be transporting this drug to her residence. In addition, the pre-sentence report contained a recommendation that Langston's base offense level should be enhanced two levels pursuant to USSG § 2D1.1(b)(1) because, in relevant part, of the .22 caliber handgun found in Langston's bedroom during the January 2001 search. Counsel for Langston objected to this enhancement because, not only was Langston not home when the search took place, but the handgun could have been used by Langston for her own protection apart from the drug conspiracy.

The district court rejected Langston's objections to the preceding sentencing enhancements with the following observation:

> From the agreed-upon evidence, Ms. Langston had reason to believe, before Mr. Salmon came to the residence—by "residence," I'm including both the place where people lived and slept and the outbuilding—she had reason to understand that the methamphetamine lab would be relocated to the property and that methamphetamine would be produced there once the relocation took place.

> With respect to the firearm, the guidelines indicate that the Court must apply the possession of the firearm guideline unless it is clearly improbable that the possession had anything to do with the drug offense. The drug offense in this case, I believe, was a conspiracy. And the Court cannot find that this gun had *no connection at all* with the drug offense.

The district court then granted a government § 5K1.1 motion for a downward departure and gave Langston a sixty-three month term of imprisonment.

Case No. 01–6380

Counsel for Langston first argues that Langston should not have been held accountable at sentencing for the 186 grams of methamphetamine mixture found in a co-conspirator's vehicle searched while parked at Langston's residence. This court reviews a district court's drug quantity determination in this context for clear error. *United States v. Gibbs*, 182 F.3d 408, 440 (6th Cir.1999). Section 1B1.3 of the sentencing guidelines provides that a defendant is responsible for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by [him]." In addition, in the case of jointly undertaken criminal activity involving contraband, defendants are responsible for all reasonably foreseeable amounts of contraband that where within the scope of the jointly undertaken criminal activity. The government must prove the amount to be attributed to a defendant by a preponderance of the evidence. *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990).

■ The uncontradicted evidence of record, as set forth above, shows that Langston knew Salmon was being evicted from his mother's residence because of his methamphetamine manufacturing and she knew he was moving the operation to her residence in his vehicle. Langston was not a neophyte; she took an active role at all points in the conspiracy in procuring the raw materials necessary for the operation and she routinely exchanged her efforts for product. It therefore cannot possibly have been clear error for the district court to conclude, against this background, that Langston might have reasonably foreseen that Salmon would be bringing some "end product" in addition to his methamphetamine laboratory to her residence on that day in July 2000. This assigned error lacks merit.

Langston's second issue for review is that the district court erred in increasing her base offense level for possession of a firearm. The sentencing guidelines provide that the base offense level of a defendant convicted of a drug offense should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir.2000) (citing USSG § 2D1.1(b)(1)). To apply the enhancement, the government must establish that 1) the defendant actually or constructively "possessed" the weapon, and 2) that such possession was during the commission of the offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.1996). "Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense." *Id.* Circumstantial evidence is sufficient to establish constructive possession. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir.2002). The burden then shifts to the defendant to demonstrate that "it was clearly improbable that the weapon was connected to the offense." *Id.* (citing USSG § 2D1.1, comment. (n.3)). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Id.* (citation omitted). A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to review for clear error only. *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir.1996).

■ The district court did not err in applying the handgun enhancement to Langston's base offense level. The handgun was found in Langston's bedroom and she admitted that it belonged to her. The gun was found at a point in time when the conspiracy to manufacture methamphetamine, centered around Langston's resi-

dence and outbuilding, was in full swing. It was therefore incumbent upon Langston to show that it was "clearly improbable" that the weapon was connected in any way to the drug conspiracy, that is, that it was "extremely unlikely" that the gun was connected to the conspiracy. *United States v. Chalkias,* 971 F.2d 1206, 1216 (6th Cir. 1992). Langston's attempt to satisfy this burden, her noting that the gun could have been used for her protection only and that she wasn't actually on the premises when the gun was discovered, falls far short of demonstrating the "clearly improbable" connection of the weapon to the crime. *See Hill,* 79 F.3d at 1486 (factors reviewed in this context include proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm). This claim lacks merit.

### Case No. 02–5008

Counsel for Troutman offers one purported issue for appellate review, that is, whether the district court erred in failing to articulate its reasoning for the extent of the downward departure awarded to Troutman. An examination of the text supporting this issue shows, however, that the "true" issue for review is "[Troutman's] contention to counsel that the Court should have rendered a level of downward departure substantially similar to that of the Appellant's brother and co-defendant, Stewart Troutman, who received 27 months pursuant to similar motion by the Appellee. Counsel filed the Notice of Appeal on behalf of the Appellant on that basis." Brief of Appellant, p. 8.

This appeal is meritless under any construction of the issue presented. First, in situations where the sentencing court must articulate its reasons for its actions, typically when the sentencing court effects an *upward* departure from a guideline range, the purpose is to permit other courts to evaluate the actual considerations driving sentencing decisions under the guidelines. *See, e.g., United States v. Kennedy,* 893 F.2d 825, 828 (6th Cir.1990). In the case at bar, the district court adopted the government's own rational, set forth in a properly filed document, in granting the downward departure. The substance of that document is available for this court's review and, therefore, this court can evaluate the actual considerations behind the district court's action. There is absolutely no requirement that any sentencing court engage in "magic words" or needless formalism in this exercise. The stated claim lacks merit.

In addition, Troutman fares no better even if the panel considers his "true" appellate issue. Counsel for the government correctly notes that this court has no jurisdiction over an appeal to consider whether a district court has effected a downward departure sufficient to satisfy the convicted defendant. *See, e.g., United States v. Gregory,* 932 F.2d 1167, 1169 (6th Cir. 1991). This appeal lacks merit.

Accordingly, the district court's judgments are affirmed.