NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0186n.06

Case No. 25-5582

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CURTIS J. PHILLIPS, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

**FILED**
Apr 23, 2026
KELLY L. STEPHENS, Clerk

Before: COLE, GRIFFIN, and READLER, Circuit Judges.

COLE, Circuit Judge. Curtis J. Phillips challenges the procedural reasonableness of his term of 360 months' imprisonment, arguing that the district court erred in calculating the converted drug weight attributable to him and in applying the dangerous weapon enhancement. For the following reasons, we affirm.

I.

Between 2023 and 2024, Phillips had multiple encounters with law enforcement. On March 17, 2023, Lee County Sheriff's officers found Phillips unconscious in a car with 1,115.60 grams of pure methamphetamine, 48.59 grams of fentanyl, scales, and approximately $8,000 in cash. Less than three weeks later, on April 4, 2023, Lee County Sheriff's officers responded to a reported overdose and again found Phillips unresponsive, this time with multiple firearms nearby, as well as 734.80 grams of pure methamphetamine. On December 28, 2023, the Owsley County Sheriff stopped Phillips after observing him improperly towing a vehicle. During a subsequent

search, she uncovered needles, a metal container with drug residue, scales, and a thermos containing 95.894 grams of methamphetamine.

On June 18, 2024, the Owsley County Sheriff, who was later joined by a Kentucky State Trooper, found Phillips unconscious in another vehicle. They retrieved multiple firearms, drug paraphernalia, 697.9 grams of methamphetamine, 21.626 grams of fentanyl, 22.573 grams of cocaine, and $2,359 in cash. Ten days later, on June 28, a Madison County Sheriff's deputy stopped a vehicle where Phillips was a passenger. When the officer discovered an outstanding arrest warrant, he arrested Phillips and searched the vehicle. He recovered $1,1161 in cash, 23.8 grams of methamphetamine, and a mixed substance containing 35.38 additional grams of methamphetamine.

In 2025, Phillips pleaded guilty to possession of 50 grams or more of methamphetamine on March 17, 2023, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon on June 18, 2024, in violation of 18 U.S.C. § 922(g)(1). For the drug possession charge, the presentence investigation report (PSR) calculated an advisory Guidelines range of 292 to 365 months' imprisonment, and recommended a 360-month sentence based on Phillips's criminal history and the nature of his offenses.

Phillips objected to the PSR on two bases. First, he objected to the drug weight calculation. Phillips argued that the total converted drug weight should exclude the drugs seized on April 4, 2023, and June 18, 2024, claiming that the drugs may have belonged to other individuals. Likewise, he claimed that the drugs seized on June 18 and June 28, 2024, should be excluded, because his ownership or possession of these drugs was not part of the same course of conduct. Second, he objected to the dangerous weapon enhancement. He contended that the preponderance of the evidence pointed against his possession of a dangerous weapon.

During the sentencing hearing, the district court noted Phillips's objections and invited the government to present its evidence. The government then called the Lee County Sheriff, who testified about his interview with Phillips following the March 17, 2023, encounter. The Sheriff stated that Phillips "admitted to drug trafficking" and that Phillips described himself as a "one-stop shop" for different controlled substances. (Sentencing Hr'g Tr., R. 56, PageID 414.) The Owsley County Sheriff also testified about her encounters with Phillips on December 28, 2023, and June 18, 2024. Having heard this evidence, the court overruled Phillips's objections and sentenced Phillips to 360 months' imprisonment followed by five years of supervised release. At the close of sentencing, Phillips renewed his objections.

Phillips timely appeals.

II.

Phillips argues his sentence is procedurally unreasonable. We review sentences imposed by district courts for abuse of discretion. *United States v. Hawkins*, 165 F.4th 442, 449 (6th Cir. 2026). A sentence is procedurally unreasonable if, among other reasons, the district court "select[s] a sentence based on clearly erroneous facts." *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (alterations in original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

A.

We first consider Phillips's argument that the district court erred in calculating the drug quantities attributed to him. Phillips contends that there was "insufficient evidence to conclude the controlled substances" recovered on April 4, 2023, belonged to him. (Appellant Br. 9–10.) He counters that the drugs may have belonged to another resident of the house with a known history of methamphetamine use or to either of the two other adults present during the search.

Alternatively, he argues that the drugs should not be considered "part of the same course of conduct or common scheme or plan as the offense of conviction," given the differences between the April and March 2023 incidents. U.S. Sent'g Guidelines Manual § 1B1.3(a)(2) (U.S. Sent'g Comm'n 2024). He raises similar arguments as to the June 2024 incidents. Phillips asserts that the drugs recovered on June 18 were not his and that neither his alleged possession of those drugs, nor the drugs seized on June 28, were part of the same course of conduct as the prior offenses.

We review a district court's drug-quantity determination for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). The government must support a reasonable drug quantity estimate by a preponderance of the evidence. *See United States v. Simpson*, 138 F.4th 438, 446 (6th Cir.), *cert. denied sub nom. Wynn v. United States*, 146 S. Ct. 276 (2025). "The district court's estimate may be based upon physical evidence (such as seized drugs) or testimonial evidence." *Jeross*, 521 F.3d at 570. Importantly, this evidence must have at least "a minimal level of reliability beyond mere allegation." *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (quoting *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000)).

The government provided such evidence. The Lee County and Owsley County Sheriffs' testimony clearly established Phillips's direct possession and control of the recovered drugs. For example, although Phillips seeks to attribute the drugs recovered on April 4 to other adults in the home, the methamphetamine was found on a dresser "[l]ess than three feet" from the bed where he was lying alone. (Sentencing Hr'g Tr., R. 56, PageID 418.) Additionally, the other residents contacted law enforcement for help and submitted written statements attesting that Phillips had brought all the contraband into the house. his evidence supports the district court's conclusion that the drugs belonged to Phillips, who was within an "arm's reach" of the items. (*Id.* at PageID 470.)

Similarly, Phillips attempts to cast doubt on his ownership of the drugs recovered on June 18, 2024, on the grounds that he did not own the vehicle he was driving. But as the district court noted, even if the ownership of the vehicle remains disputed, Phillips was "the only one operating [it]" on that day. (*Id.* at PageID 460.) Phillips had also previously shown others the gun that was recovered from the vehicle. This physical and testimonial evidence sufficiently links Phillips to the recovered items, supporting the district court's attribution of the drug quantities to him for sentencing. *See Jeross*, 521 F.3d at 570.

We also find unavailing Phillips's contention that the incidents were not part of the same course of conduct. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S. Sent'g Guidelines Manual § 1B1.3 cmt. n.5(B)(i). "In analyzing the connection between offenses, we consider three factors: 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" *United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018) (quoting U.S. Sent'g Guidelines Manual § 1B1.3 cmt. n.5(B)(ii)). If one of these factors is absent, at least one of the remaining factors must be more strongly established— for example, through "stronger evidence of similarity or temporal proximity." *Amerson*, 886 F.3d at 574.

The March 17 and April 4, 2023, incidents share multiple commonalities: Phillips was found unconscious alongside cash, drug paraphernalia, firearms, and large quantities of methamphetamine. Taken together, these items suggest a common purpose of drug distribution. These episodes took place within three weeks. Thus, they were close enough in time to consider at sentencing. *Compare United States v. Kappes*, 936 F.2d 227, 230–31 (6th Cir. 1991) (holding

that a six-year gap was too remote to establish common conduct) *with United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir. 1990) (finding a common course of conduct despite a 20-month gap); *see also United States v. Atkins*, No. 25-5104, 2025 WL 3488274, at *3 (6th Cir. Dec. 4, 2025) (finding a common course of conduct despite a three-month gap).

Although the later incidents in December 2023 and June 2024 were separated in time, they bore the same hallmarks: an unconscious Phillips, large quantities of methamphetamine, firearms, and drug paraphernalia. And the two June 2024 incidents took place only ten days apart. This pattern of similar, regular, and closely timed incidents—particularly between March and April 2023 and June 18 and 28, 2024—supports the district court's finding of the same course of conduct. *Cf. Amerson*, 886 F.3d at 574–76.

Finally, Phillips's claim that the incidents are too far apart in time fails to account for his months-long periods of incarceration. As we have noted, "a lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct," but instead may show that the defendant was "forced to put the venture on hold." *United States v. Hill,* 79 F.3d 1477, 1483 (6th Cir. 1996) (citation modified).

Accordingly, we find that the district court did not rely on clearly erroneous facts in its drug-quantity determination and therefore did not abuse its discretion. *See Hawkins*, 165 F.4th at 450–51.

## B.

Next, Phillips claims that the district court erred in applying the dangerous weapon enhancement. He asserts that the statements linking him to the firearms recovered on April 4, 2023, and June 18, 2024, were made out of court and lacked specificity and independent

corroboration. In evaluating this claim, "we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009).

Under the Sentencing Guidelines, a defendant's recommended offense level increases by two levels if the defendant possessed a dangerous weapon in connection with the offense. U.S. Sent'g Guidelines Manual § 2D1.1(b)(1). "We have endorsed the use of a burden-shifting framework at sentencing to determine whether the firearm enhancement applies." *United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir. 2023). First, the government must establish by a preponderance of the evidence that the defendant (1) actually or constructively possessed a weapon, which (2) was then utilized during the commission of the offense. *Id.* Although these two inquiries are legally distinct, they usually merge into a single factual determination when the weapon is present at the arrest or crime scene; thus, the government satisfies its burden by showing possession. *Id.* at 323. Thereafter, "the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (quoting *Hill*, 79 F.3d at 1485).

Here, the district court correctly applied this burden-shifting framework. First, the court found that there was sufficient evidence of Phillips's constructive possession of the firearms. Officers found two firearms "inside the bedroom with Mr. Phillips" on April 4, 2023, and multiple firearms inside of the vehicle with Phillips on June 18, 2024. (Sentencing Hr'g Tr., R. 56, PageID 460–62.). The court further determined that Phillips had not met his burden of proof to show that it was "clearly improbable that [the firearms] were connected with the offense," given that the firearms and drugs were repeatedly found together near his person. (*Id.* at PageID 472.) Accordingly, the court concluded that Phillips possessed dangerous weapons during the charged offenses.

We thus conclude that the district court did not clearly err in its application of the firearm enhancement and, accordingly, did not abuse its discretion.  *See Kennedy*, 65 F.4th at 319.

## III.

For these reasons, we affirm Phillips's sentence.