UNITED STATES of America,
Plaintiff–Appellee,

v.

Torye Shevar GILBERT, Defendant–
Appellant.

No. 97–1792.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 8, 1998.

Decided April 2, 1999.

Michael Hluchaniuk, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Bay City, MI, for Plaintiff–Appellee.

David G. Myers (argued and briefed), Caro, MI, for Defendant–Appellant.

Before: NELSON and NORRIS, Circuit Judges; COFFMAN, District Judge.*

DAVID A. NELSON, J., delivered the opinion of the court, in which ALAN E. NORRIS, J., joined. COFFMAN, D.J. (pp. 979–82), delivered a separate opinion concurring in part and dissenting in part.

---

* The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

1. This section of the criminal code provides that "[i]f the court of appeals determines that

DAVID A. NELSON, Circuit Judge.

After pleading guilty to a charge that he distributed crack cocaine on August 7, 1996 (a date on which he sold a .14 gram "rock" of crack to an undercover agent), the defendant was sentenced to imprisonment for a term of 15 years and 10 months. He now appeals his sentence.

The principal issue on appeal is whether the district court erred in its determination of the quantity of drugs attributable to the defendant under the "relevant conduct" provision of the United States Sentencing Guidelines, U.S.S.G. § 1B1.3. (Based in part on a finding that the defendant had been "consistently" engaged in "essentially continuous" activity as a drug dealer from early 1993 until his arrest in 1996, the court found the defendant responsible for the distribution of more than 220 grams of crack.) The defendant also challenges both the district court's refusal to credit him with acceptance of responsibility, see U.S.S.G. § 3E1.1, and the court's decision to increase his guideline offense level for obstructing the administration of justice by committing perjury at the sentencing hearing. See U.S.S.G. § 3C1.1.

Upon review, we conclude that none of the district court's findings of fact was clearly erroneous; that when due deference is given the court's application of the guidelines to the facts, the guidelines cannot be said to have been misapplied here; and that the defendant's sentence—a sentence within the applicable guideline range—was not unreasonable and was not imposed in violation of law. We shall therefore affirm the sentence, as 18 U.S.C. § 3742(f)(3) requires us to do.[1]

I

According to evidence presented at his sentencing hearing, the defendant, Torye

the sentence ... was [neither] imposed in violation of law [n]or imposed as a result of an incorrect application of the sentencing guidelines, ... and is[not] unreasonable, ... it shall affirm the sentence."

Shevar Gilbert, was a long-time member of a street gang called the Fourth and Kirk Posse, or "4KP." The name was derived from an intersection in a Saginaw, Michigan, neighborhood frequented by members of the gang. The gang's territory also extended to the nearby intersection of Third and Norman.

The leader of the gang was said to be a young man named Celester DeGroat. Testimony given by California crack dealer Eugene Beaver indicated that DeGroat approached Beaver in January of 1993 about the latter's supplying drugs for resale by the 4KP gang; that Beaver delivered nine ounces of crack to DeGroat that month and saw DeGroat "distribute[ ] the cocaine out amongst all his little friends, all his buddies from 4KP;" that although defendant Gilbert received none of the drugs in January, nine ounces not being enough to go around among all of the members of the gang, Gilbert (who was already selling dope obtained from other sources) paid DeGroat in cash for two ounces of Beaver's product in February of 1993; that DeGroat "fronted" Gilbert an additional two ounces on this occasion; that until June of 1994, after an initial hiatus of three or four months, Beaver returned to Saginaw at least once a month; that on most of the days when he visited the Fourth and Kirk/Third and Norman area, Beaver saw Gilbert there; that this "was a well known dope street in Saginaw," where "they sold rocks constantly" and "[e]verybody hanging out on the street, everybody had rocks" for sale to people who pulled up in automobiles; that defendant Gilbert was among the people going up to cars and selling rocks; and that, as one of the members of the gang, Gilbert was seen selling crack "[a] lot."

A witness named Frederick Irvin testified that during 1993 and 1994 he was at the Fourth and Kirk/Third and Norman area "[e]very other day;" that "[e]very time" he went there he saw defendant Gilbert shooting dice and selling rocks of crack cocaine to people who would drive up

or walk up to where the gang members were hanging out; and that he sold Gilbert a total of four and a half ounces of crack in December, 1994, when Gilbert's usual supplier ran out of stock. (In grand jury testimony, according to Gilbert's presentence investigation report, Irvin testified that it was the summer of 1994 when he supplied Gilbert with crack cocaine. The district court accepted Irvin's sentencing hearing testimony concerning the amount of crack he sold Gilbert, however, and although Irvin testified that he was arrested in October of 1994, the court does not seem to have questioned the December time frame. The record does not disclose whether Irvin was incarcerated between October and December.)

The testimony of Beaver and Irvin was contradicted by that of other witnesses, including DeGroat and Gilbert. For reasons adequately explained on the record, however, the district court found Beaver and Irvin to be the more credible witnesses.

In October of 1995, according to the presentence investigation report, defendant Gilbert was detained by Saginaw police officers investigating a complaint about the sale of drugs at an abandoned house at Third and Norman. On searching the porch where Gilbert had been sitting, the police found five pieces of crack cocaine twisted in a piece of brown paper that was wedged between the porch and the steps. Although Gilbert was unemployed and had no regular source of legitimate income, he was found to be in possession of a gold chain and almost $400 in cash. Gilbert was charged on this occasion, but the charges were dropped.

In determining the total amount of drugs attributable to Gilbert for sentencing purposes, the district court counted both the five pieces of crack discovered in the porch steps during the October 1995 incident and an additional amount the street value of which would have been $400. Gilbert has not argued that he intended to use the five pieces of crack

personally, rather than selling them as he had sold the $400 worth—and if the district court was correct in treating Gilbert's 1993 and 1994 transactions as relevant conduct, Gilbert's brief on appeal offers no rationale for excluding the 1995 conduct or for questioning the district court's determination of the quantity involved.

In the spring and summer of 1996, as part of an investigation conducted by the FBI, undercover agents and informants made repeated purchases of drugs in the Fourth and Kirk/Third and Norman area. One such purchase was made from defendant Gilbert. An undercover agent drove to Fourth and Kirk on August 7, 1996, stopped in the roadway, and asked Gilbert if he had a $20 rock. Responding that he did, Gilbert removed a piece of crack from a paper sack and handed the drug to the undercover agent in exchange for a $20 bill. Gilbert was arrested soon afterwards. Eleven more rocks of crack were found in his sack. A pager was found on his person, along with $493 in cash. Gilbert subsequently claimed that he happened to find the bag of crack on the sidewalk; that he had been planning to keep the drugs for his personal use, rather than selling them; and that it was not crack sales, but luck at dice and the sale of some automobile wheels, which explained the large amount of cash he was carrying.

In October of 1996 Gilbert was indicted on one count of distributing crack on August 7 and one count of possessing crack on that date with intent to distribute it. The government subsequently dismissed the possession charge, pursuant to a plea agreement, and Gilbert pleaded guilty to the distribution charge.

The United States Attorney's position, as reflected in worksheets attached to the plea agreement, was that Gilbert should be held responsible for at least 150 grams of crack but less than 500 grams. For sentencing guidelines purposes, a quantity in this range would yield a base offense level of 34. See U.S.S.G. § 2D1.1(c)(3).

The probation officer who prepared Gilbert's presentence report thought that Gilbert should be held responsible for 220.72 grams of crack, a figure based on various police and laboratory reports, statements given to the FBI by Beaver, and testimony given before a grand jury by Irvin. Distribution of the 220.72 grams was said to have occurred between February of 1993 and August of 1996, when Gilbert was arrested.

With one minor modification, the district court accepted the probation officer's recommendation as to the quantity of drugs for which Gilbert should be held responsible. Accordingly, the court placed Gilbert's base offense level at 34. Because the court found that Gilbert had perjured himself at the sentencing hearing, two levels were added for obstruction of justice. No reduction having been granted for acceptance of responsibility, the total offense level thus came to 36. Given Gilbert's criminal history category (Category I), this produced a guidelines sentence range of imprisonment for 188–235 months. The court imposed a sentence of 190 months, and Gilbert promptly appealed.

## II

### A

■ Gilbert argues that the 1993 and 1994 crack transactions—the acquisition of four ounces from DeGroat in 1993 and four and a half ounces from Irvin in 1994—should not have been used in calculating his sentence. We reject the argument.

■ The district court's factual finding that Gilbert engaged in these drug transactions is subject to reversal only if clearly erroneous. *United States v. Hill,* 79 F.3d 1477, 1481 (6th Cir.), *cert. denied,* 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). The finding is amply supported by the testimony of Beaver and Irvin. Although Gilbert contradicted their testimony, the district court was in a better position than we are to decide who was telling the truth.

We cannot say that the court's credibility determinations were clearly erroneous.

■ *Hill* teaches that we must make a *de novo* legal determination as to whether the 1993 and 1994 transactions amounted to "relevant conduct." *Id.* Relevant conduct encompasses acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (1995). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" U.S.S.G. § 1B1.3, comment. (n.9) (1995). Even if not part of a common scheme or plan, prior actions constitute part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* In applying this guideline the courts should consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*

The district court concluded that the DeGroat and Irvin transactions constituted relevant conduct because Gilbert's "consistent pattern" of acquiring, packaging, and distributing crack cocaine had been "essentially continuous" from early 1993 until his arrest in August of 1996. During those years, the district court observed, dealing in crack cocaine was "basically what [Gilbert] did[,] in addition to partying [and] hanging out with his friends." Aside from occasional odd jobs, the court found, Gilbert's time was not occupied with much of anything else.

In *United States v. Hill* this court concluded that an isolated drug transaction 19 months prior to the transaction for which the defendant was indicted could not be included in the defendant's sentence calculation. The government introduced no evidence in *Hill* that the defendant sold drugs regularly, and the district court made no finding that he did so. *Hill,* 79 F.3d at 1480. The only similarity between the transactions in question, the *Hill* panel observed, was that both involved crack cocaine. *Id.* at 1485.

A very different situation was presented in the case at bar. Here there was strong evidence that the earlier transactions were part of the same continuous course of conduct as was the offense charged in the indictment. Here the transactions all involved the same gang, the same type of drug, the same general location, and the same *modus operandi.* Here the defendant sold crack cocaine regularly, and the offenses included in the calculation of his sentence were all part of an ongoing series of offenses. This case thus bears little resemblance to *Hill.*

The instant case bears a strong resemblance, on the other hand, to *United States v. Miller,* 910 F.2d 1321 (6th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). There the defendant made regular purchases and sales of cocaine—on a weekly basis—over a 20–month period. *Id.* at 1323. The district court treated the defendant's sales of cocaine over that period as relevant conduct, and this court found no justification for modifying the resultant sentence. *Id.* at 1327. The case at bar is controlled by *Miller,* in our view, and not by *Hill.*

### B

■ Defendant Gilbert argues that he accepted responsibility for his crime and was therefore entitled to a three-level reduction in his offense level. See U.S.S.G. § 3E1.1. Such a reduction was anticipated by his plea agreement, Gilbert points out, and he maintains that he was entitled to the reduction because he quickly confessed to his involvement in the charged offense and timely advised the authorities of his intent to plead guilty.

Gilbert had the burden of proving acceptance of responsibility by a preponderance of the evidence. *United States v. Donathan,* 65 F.3d 537, 541 (6th Cir.1995). The district court's finding that Gilbert did not meet that burden is subject to reversal only for clear error, and great deference is afforded the court's determination in light of the credibility issues involved. *Id.* at 541–42.

Gilbert's guilty plea did not require a finding that he had accepted responsibility for his offense. See U.S.S.G. § 3E1.1, comment. (n.3) (1995). The district court found that Gilbert repeatedly perjured himself during the sentencing hearing, and this finding is not clearly erroneous. The perjury was obviously inconsistent with acceptance of responsibility, so we have no basis for reversing the denial of the credit.

### C

Finally, defendant Gilbert submits that the district court committed clear error by imposing a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Gilbert argues that perjury about his relevant conduct did not impede the investigation, prosecution or sentencing of the charged offense, and he says that the court did not make a specific finding that Gilbert's misrepresentations involved a material fact. Upon *de novo* review, we find ourselves unpersuaded.

Section 3C1.1 provides for a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The district court has considerable discretion in determining whether this enhancement applies. *United States v. Moss,* 9 F.3d 543, 553 (6th Cir.1993).

In imposing the two-level enhancement, the district court found that Gilbert perjured himself when he testified that he simply found the drugs that were involved in the offense to which he pleaded guilty.

The court observed that this testimony indicated that Gilbert was "a victim of circumstances rather than an intentional distributor of crack cocaine." The court properly determined that the testimony was material, having been calculated to affect the court's decision on what sentence to impose within the guideline range. See U.S.S.G. § 3C1.1, comment. (n.5) (1995). And the court properly imposed an obstruction-of-justice enhancement because Gilbert provided "materially false information to a judge." See U.S.S.G. § 3C1.1, comment. (nn.3(b) & 3(f)) (1995).

### III

If we look only at the conduct for which he was convicted, defendant Gilbert's punishment seems very harsh indeed. Through the Sentencing Commission, however, Congress has said that sentencing courts must examine "relevant conduct," if any, extending beyond the offense of conviction.

Gilbert's relevant conduct included more than three years of making regular sales of crack cocaine, day in and day out, on the streets of Saginaw. That being the case—and Gilbert having refused to accept responsibility for his conduct and having tried to mislead the court about what he was actually doing—we are not persuaded that the Sentencing Commission, the Congress, or the electorate to which Congress is ultimately responsible would think it unreasonable to take Gilbert off the streets for 15 years or so.

**AFFIRMED.**

COFFMAN, District Judge, concurring in part and dissenting in part.

While I agree with the majority that the defendant is not entitled to a three-level reduction in his offense level for acceptance of responsibility and that his offense level was properly enhanced for obstruction of justice, I would not count as relevant conduct his purchases of cocaine in

1993 and 1994.[1] Although the trial court's factual findings as to the 1993 and 1994 transactions are not clearly erroneous, that court erred in its determination that the factual findings warrant the application of the relevant conduct guideline, U.S.S.G. § 1B1.3.

A court must find "distinctive similarities between the offense of conviction and the remote conduct" before classifying prior acts as relevant conduct under U.S.S.G. 1B1.3. *United States v. Hill,* 79 F.3d 1477, 1482 (6th Cir.1996). "Isolated, unrelated events that happen only to be similar in kind" do not warrant the application of the relevant conduct guideline or support increasing a defendant's base offense level under the guidelines. *Id.* (citing *United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir.1993)). In adjudicating whether a defendant's previous conduct is similar enough in kind to constitute part of the same course of conduct, courts must not overly generalize the nature of the criminal conduct and therein "render worthless the relevant conduct analysis." *Hill,* 79 F.3d at 1483.

The Sentencing Guidelines and this court apply a sliding-scale approach to the relevant conduct determination. "Where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor." *Id.* (citing *United States v. Hahn,* 960 F.2d 903 (9th Cir.1992)). Thus, the pertinent factors—time interval, similarity of conduct, nature of the offenses, and regularity of the conduct—should be analyzed not as discrete, autonomous criteria, but in relation to each other.

A series of isolated drug transactions, separated by an extended period of time, cannot be categorized as a single episode or an ongoing series of offenses mandating the application of the relevant conduct guideline.[2] "Generally, where two isolated

1. The October 1995 event qualifies neither as relevant conduct nor as proof of a common scheme or the same course of conduct by which to ensnare the 1993 and 1994 drug purchases and sales as relevant conduct. First, neither the district court nor the presentence investigation report, whose factual conclusions that court accepted, explicitly found as a matter of fact that Gilbert possessed crack cocaine on October 2, 1995. Although the charge against the defendant arising from that incident was dismissed, both the presentence report and the district court included the October 1995 drug calculations as relevant conduct, as does the majority. Yet at sentencing, both the defendant and the district court cast the debate in either-or terms: Either the defendant would be sentenced according to only the amount of drugs he possessed in August 1996 or the 1993 and 1994 transactions would count against him as relevant conduct. On appeal, the defendant has not discussed the October 1995 event, nor has the United States urged waiver of the defendant's objection to the inclusion of any amount of cocaine base beyond the amount in his possession at the time of his 1996 arrest. The defendant's challenge to the inclusion of the 1995 amount is properly before this court because it was factored into the total drug weight at sentencing, over the defendant's objection. Whether the 1995 amounts should be included as relevant conduct need not be remanded to the district court as the issue can be determined as a matter of law.

Second, that event could not have been linked, as relevant conduct, to the August 1996 drug sale to which the defendant pleaded guilty because it occurred 10 months earlier; involved possession, not sale; and was not joined to the offense of conviction by proof of any repetitive activity.

Third, without proof of regular drug sales in 1995 and 1996, the October 1995 event cannot create a bridge between the 1993 and 1994 drug activity on the one hand and the August 1996 offense of conviction on the other.

Accordingly, I am unable to categorize the October 1995 event as either relevant conduct or continued drug purchase/sale activity. While its inclusion does not affect the base offense level, the drug calculation from that incident is improperly included by the district court and by the majority, because only the 1993 and 1994 drug activity are at the center of this appeal, due to the defendant's either-or stance both here and below.

2. *Compare United States v. Miller,* 910 F.2d 1321 (6th Cir.1990). In that case, the defendant engaged in a continuous pattern of drug purchases and resales: the same amount each week, every week without fail for 20 months. That conduct was characterized properly as relevant conduct. Here, any proof of the

drug transactions are separated by more than one year, a 'relevant conduct' finding may not be premised on the sole similarity that both transactions involved the same type of drug.... Therefore the government [is] required to compensate for the weakness of the temporal and regularity factors by presenting substantially stronger proof of similarity." *Hill,* 79 F.3d at 1484. In the instant case, the 1993 and 1994 occurrences lack the requisite strong similarity and temporal proximity to the 1996 offense and are not connected to the offense of conviction by proven, regular, and repetitious drug activity.

Gilbert was arrested in 1996 and charged with distributing 1.54 grams of cocaine base that he either sold to an undercover agent or had in his possession when he was arrested. 3.43 grams were attributed to Gilbert based on $490 he possessed at the time of his arrest. *Almost two years* before his 1996 arrest, Gilbert bought 127.56 grams of cocaine base from Irvin, and *three and one-half years* before his 1996 arrest, Gilbert bought from Beaver 113.39 grams of cocaine base. Irvin saw the defendant engage in regular drug sales throughout 1993 and most of 1994.[3]

The temporal proximity between the 1993–94 occurrences and the offense of

conviction is attenuated and, although involving the same kind of drug, the incidents are dissimilar. The testimony credited by the district court easily supports a finding that Gilbert dealt cocaine regularly on the streets of Saginaw from February 1993 through at least October 1994. Beyond that time frame, however, the district court heard neither proof of regular, continuous cocaine sales by the defendant nor proof of even one drug sale by Gilbert in 1995 or 1996, prior to the date of his arrest. Admittedly, witnesses testified that in 1995 and 1996 Gilbert continued to be a 4KP gang member; was unemployed without any regular legal source of income; was once viewed with a gold chain and $400 in cash; had a pager; and was seated near some crack cocaine once in 1995. None of this evidence, however, amounts to firm proof of continuous drug dealing by the defendant in 1995 or 1996.

Underscoring this omission from the testimony are the FBI's regular, continuous purchases of drugs in the 4th and Kirk/3rd and Norman vicinity throughout the spring and summer of 1996. Considering their opportunities to have observed drug activity, surely the FBI agents would have seen Gilbert—an every-other-day crack dealer in 1993 and most of 1994—selling drugs at least one time other than the date of his

---

defendant's drug sales or purchases after October or December 1994 is sporadic, irregular, and separated by long stretches of time.

3. These two witnesses' evidence is less compelling than the majority portrays it. Beaver was not in Saginaw continuously from February 1993 until June 1994. Instead, in February 1993 he left Saginaw and returned to California for three or four months. Thereafter he returned to Saginaw "at least once a month every month up until June of '94" for an unspecified duration each time. When he visited Saginaw, Beaver went to the 4th and Kirk/3rd and Norman area "on different occasions," but he failed to explain whether these occasions were frequent or sporadic. On "most days" of these "different occasions," Beaver saw Gilbert in the area. Inconclusive at best as to frequency, Beaver's testimony does not support a finding that he saw Gilbert frequently in the relevant area.

That factual refinement is rendered moot by Irvin's testimony that he saw Gilbert selling drugs at 4th and Kirk/3rd and Norman "every other day" during 1993 and 1994, but the majority accords undue weight to the scope of that proof as well. At the sentencing hearing, Irvin twice claimed to have sold Gilbert drugs in December 1994; before the grand jury, he fixed the date at July or August of that year. The district court accepted the factual findings in Gilbert's presentence investigation report, which concluded that the sale was in the summer of 1994. Irvin conceded, however, that he was arrested in October of 1994. If Irvin's arrest ended his opportunity to observe Gilbert selling drugs, then 22 months elapsed between the defendant's last proven sale in 1994 and the offense of conviction. If he remained free through December, and if Irvin's sale to Gilbert occurred in December (contrary to the district court's finding), then the lapse in proven drug sales was 20 months.

arrest, had he been dealing drugs regularly in 1995 and 1996. Yet the record contains no such proof that Gilbert was continuing his 1993–94 behavior.

While drug activity cannot be condoned, neither should this court permit draconian stretching of the evidence to justify a sentence longer than is warranted. The defendant's jewelry, unemployment, and gang membership in 1995 and 1996, coupled with one isolated drug incident in each of those two years, do not combine to create a continuous course of conduct in 1995 and 1996. Intuitive inferences based upon a pattern of continuous drug dealing in 1993 and 1994 are not an adequate substitute for solid proof of continuation of the scheme. The evidence is thus insufficient, either to support a continued course of conduct in 1995 and 1996, to explain the lack of proof of constant drug activity by the defendant during 1995 and 1996, or to link the 1993–94 every-other-day dealing with either the arguable possession offense in October 1995 or with the isolated crack sale in 1996.

Absent a finding of fact that the defendant himself (not merely other members of his gang[4]) engaged in an ongoing pattern of selling crack cocaine during 1995 and 1996, his offense level cannot be raised based on relevant conduct under U.S.S.G. § 1B1.3. The drug activity which the majority would include here as relevant conduct is simply not part of the same course of conduct as the offense to which Gilbert pleaded guilty.[5] If the defendant is such a major drug dealer that he should be taken "off the streets for 15 years or so," as the majority concludes, then surely the prosecution could have produced evidence of at least one drug sale by the defendant in the 20 to 22 months which intervened between the last instance of supposedly relevant conduct and the date of the defendant's arrest. That this court requires no proof of regular drug sales in 1995 and 1996, instead inferring regular drug dealing from Gilbert's gang membership during those two years, contravenes the purpose of § 1B1.3 of the Sentencing Guidelines. The relevant conduct assessment should make the defendant answer only for other criminal conduct that is essentially part of the offense of conviction, instead of penalizing him for conduct which, while also criminal, has its own independent existence.

I would reverse as to the district court's relevant conduct determination.

---

4. Compare Fed.R.Evid. 404, barring evidence of a person's character for the purpose of proving action in conformity with that character trait. Comments explain that character evidence "permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." In this case, the United States seeks to punish the defendant for selling drugs based on his gang membership, not on evidence of any actual sales.

5. The Seventh Circuit cautions:
[T]he aggregation rule "grants the government a fearsome tool in drug cases.... [B]efore we allow defendants to serve enhanced sentences based on conduct that the government, for one reason or another, did not see fit to include either in its indictment or its plea agreement, we must be satisfied that the allegedly related conduct is, in fact, intertwined with the offense of conviction. Likewise, we again remind prosecutors 'not to indict defendants on relatively minor offenses and then seek enhancement sentences later by asserting that the defendant has committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted.'"
United States v. Bacallao, 149 F.3d 717, 721 (7th Cir.1998), citing United States v. Fischer, 905 F.2d 140, 142 (7th Cir.1990).