NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0557n.06
Filed: June 28, 2005
File Name: 05a0557n.06
Filed: June 28, 2005

**No. 04-5800**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| AURELIUS GALES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  CLAY and SUTTON, Circuit Judges; OBERDORFER, District Judge.[*]

SUTTON, Circuit Judge.  Following his arrest for selling a stolen shotgun to undercover police officers, Aurelius Gales pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and received an 87-month prison sentence.  On appeal, he argues that the district court mistakenly gave him a two-level enhancement under the relevant-conduct provisions of the Sentencing Guidelines, *see* U.S.S.G. § 2K2.1(b)(1)(A), (b)(4), then independently contends that at a minimum his sentence should be remanded for reconsideration in the aftermath of *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005).  We agree with his second contention, but not

---

[*] The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

his first, and accordingly vacate his sentence and remand the case solely for resentencing under the post-*Booker* Guidelines.

I.

On November 13, 2002, Gales and two friends stole a Glock .40 caliber handgun and a Browning Buck Mark .22 caliber handgun, among other items, from a parked car. Later that day, one of Gales' friends sold the Glock handgun to undercover police officers who were purporting to operate a local store. Less than an hour later, Gales and the other friend sold the Browning to the same officers at the same store. At this point, the undercover officers did not make any arrests arising from these sales.

Roughly two months later, on January 9, 2003, Gales sold a Mossberg twelve-gauge shotgun to undercover officers at the same store. Police later identified the shotgun as one of 28 shotguns stolen from a Kmart on March 20, 2002. Following this sale, Gales was arrested and eventually pleaded guilty to a felon-in-possession-of-a-firearm charge.

The district court started its calculation of Gales' sentence with a base offense level of 20, which is what is required for a felon-in-possession charge. *See* U.S.S.G. § 2K2.1(4)(A). The district court added two levels because the firearm in question (the Mossberg) was stolen, added another two levels because it concluded that Gales' possession of the other two firearms (the Glock and the Browning) amounted to relevant conduct, *see* § 2K2.1(b)(1)(A) (requiring a two-level enhancement for relevant conduct involving three to seven firearms), and subtracted three levels for acceptance

of responsibility. All told, these calculations brought Gales' offense level to 21. When combined

with a criminal history category of VI, the Guidelines gave Gales a sentencing range of 77 to 96

months. The district court sentenced Gales to an 87-month prison term.

II.

A.

Gales first contends that the district court erred by giving him a two-level enhancement under

the Guidelines' relevant-conduct section. In his view, the two guns that were stolen and sold on

November 13, 2002, should not have counted as relevant conduct in relation to the January 9, 2003,

sale of a stolen shotgun for which he was charged and to which he pleaded guilty. We apply a clear

error standard of review to findings of fact made at sentencing, *United States v. Orlando*, 363 F.3d

596, 600 (6th Cir. 2004), and a de novo standard of review to the district court's legal interpretation

of what constitutes relevant conduct under the Guidelines, *United States v. Gilbert*, 173 F.3d 974,

978 (6th Cir. 1999).

Under the Guidelines, "relevant conduct" means conduct that is "part of the same course of

conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see id.*

§ 5C1.2, cmt. n.3. Offenses will qualify as part of the same "course of conduct if they are

sufficiently connected or related to each other as to warrant the conclusion that they are part of a

single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3, cmt. n.9(b). In assessing whether

offenses are sufficiently connected to be within the same course of conduct, the Guidelines direct

us to consider the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*; *see also United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996) (indicating that these factors are analyzed according to a sliding scale that allows for a stronger showing in one factor to compensate for a weaker or absent showing in another). A "common scheme or plan" exists when the offenses are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, cmt. n.9(a). Although there is a difference between the terms "same course of conduct" and "common scheme or plan," there is also "considerable overlap between [them]." *Hill*, 79 F.3d at 1483. As a result, when evaluating the degree of similarity between incidents as part of a same-course-of-conduct analysis, the common-scheme-or-plan factors may be highly relevant. *See id.*

Our case law helps to illustrate how these principles should be applied. In *United States v. Faison*, 339 F.3d 518 (6th Cir. 2003), the defendant argued that a fourteen-month lapse of time between the end of the charged cocaine conspiracy and the discovery of two pistols and drug proceeds in his possession precluded a finding that his possession of the firearms was relevant conduct to the conspiracy. We disagreed, noting that the proceeds, which Faison admitted were either from selling cocaine or would be used in purchasing it, showed that he was "a continuing cocaine trafficker." *Id.* at 521. This "continuing cocaine trafficking constitute[d] the same course of conduct and ha[d] a common purpose as his offense of conviction." *Id.*

- 4 -

In *United States v. Gilbert*, 173 F.3d 974 (6th Cir. 1999), the district court determined that the defendant's possession of crack cocaine in February of 1993 and December of 1994 qualified as relevant conduct in relation to an August 7, 1996, arrest for distributing crack cocaine. *Id.* at 976–78. In upholding that decision, we pointed to the "consistent pattern of acquiring, packaging, and distributing crack cocaine" established by the defendant in the years before his arrest. *Id.* at 978.

In the light of these Guidelines provisions and in the light of these cases, it is not difficult to conclude that the two gun sales on November 13th and the one gun sale on January 9th ought to be included as part of the same course of conduct—namely, the illegal possession of firearms. Each of the three instances of possession followed a common pattern: Gales possessed a stolen firearm and then Gales or his friends sold the firearm, always to the same store. A common purpose underlay Gales' possession of the firearms in each instance—selling the firearm. Just two months separated the sale of the Mossberg from the sale of the other two guns, a far shorter time span than the fourteen months that *Faison* upheld and the three and a half years that *Gilbert* upheld. *See also* U.S.S.G. § 1B1.3, cmt. n.9(b); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1994) ("[T]he . . . nearly contemporaneous[] possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution."); *United States v. Windle*, 74 F.3d 997, 1000–01 (5th Cir. 2003) (holding that "unlawful possession of five firearms throughout a four to five month period" established a "behavior pattern of unlawfully possessing [ ] firearms . . . [that] meets the same course of conduct requirement").

- 5 -

Attempting to overcome this conclusion, Gales invokes *United States v. Hill*, 79 F.3d 1477 (6th Cir. 1996), arguing that there must be "distinctive similarities between the offense of conviction and the remote conduct." *Id.* at 1482. *Hill* addressed the relevance of a cocaine transaction that occurred nineteen months before a conviction for possession with intent to distribute cocaine base. In concluding that the second act did not amount to relevant conduct, *Hill* reasoned that the two events were isolated in time and nature and shared just one parallel—they both involved cocaine—a similarity that failed by itself to establish that they were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §1B1.3; *Hill*, 79 F.3d at 1483–84. Here, in marked contrast, the three instances of gun possession shared numerous common features and occurred within a relatively short period of time.

Gales does not fare any better in relying on *United States v. Maxwell*, 34 F.3d 1006 (11th Cir. 1994), which held that a single sale of cocaine a year before being arrested for participating in a dilaudid-distribution scheme did not count as relevant conduct and which cautioned against abstracting "at such a level of generality as to eviscerate the evaluation of whether uncharged criminal activity is part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at 1011 (quotations omitted). Neither the holding of *Maxwell* nor its cautioning *dictum* applies here. The similarities between the incidents and the relatively short time span between the incidents here establish considerable breathing room between that case and this one.

For like reasons, it makes little difference that, as Gales submits, the Mossberg and "the other guns . . . were sold on different dates," JA 75, the thefts involved different victims or additional property, and—unlike the theft and sales of the Glock and Browning—"there [was] a significant time lapse from when the [Mossberg] was stolen to when it was sold," JA 23. These arguments show only that the three incidents did not amount to precisely the same conduct, as opposed to relevant conduct. That the guns were stolen from different people on different dates, that Gales possessed one of the guns (the Mossberg) without help from his two friends and that he apparently had some trouble selling the Mossberg hardly shows that the three incidents were not "part of the same course of conduct." U.S.S.G. §1B1.3. It suffices here that the government has shown a compelling similarity between the incidents—by showing a common purpose (selling the firearms) and a similar mode of operation (selling stolen firearms to the same store)—and a brief time interval separating them.

Lastly, Gales briefly submits that he never possessed the Glock. Having failed to object to this fact in the presentence report, *see* JA 75, and at the sentencing hearing, *see* JA 16–38, Gales must show that the district court committed plain error in concluding otherwise, *see United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005) (noting that "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, [ ](3) that affect[s] substantial rights," and an "appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings") (quotations omitted). Gales fails to meet this high standard because he cannot point to anything in

the record (or for that matter anything anywhere else) that shows he did not possess the Glock on

November 13th, the day it was stolen and promptly sold.

B.

Gales next argues that his case should be remanded for resentencing in the aftermath of

*United States v. Booker*, __ U.S. __, 125 S.Ct. 738 (2005). The government concedes the point, and

accordingly we remand the case to the district court for the sole purpose of resentencing him under

the non-mandatory Guidelines.

III.

For these reasons, we affirm the calculation of Gales' sentence and remand the case to the

district court for the sole purpose of resentencing him under the non-mandatory Guidelines.