NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0363n.06

Case No. 22-3780

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Aug 20, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| VINCENT MOORE, JR., | ) |  |
| Defendant - Appellant. | ) | OPINION |
|  | ) |  |
|  | ) |  |

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which GRIFFIN, J., joined. CLAY, J. (pp. 8–14), delivered a separate dissenting opinion.

JULIA SMITH GIBBONS, Circuit Judge. Vincent Moore pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At his sentencing hearing, the district court altered Moore's base level offense, and applied several enhancements, after finding that he illegally possessed firearms on two other occasions. Because the district court reasonably found that these additional violations were in the "same course of conduct" as Moore's indicted offense, we affirm.

I.

Officers from the Toledo Police Department responded to a call concerning a person discharging a firearm from the window of a silver Jeep on December 19, 2020. In pursuit of that report, the officers located the Jeep, conducted a traffic stop, and ordered the driver and passenger out of the vehicle. Vincent Moore was the passenger; upon his exit, officers spotted a firearm in

the vehicle's side door. The officers seized the firearm, a .40 caliber semiautomatic pistol loaded with 11 rounds of ammunition, but with the capacity to hold 15, and arrested Moore.

A few months later, the government indicted Moore for the December 19 event, charging him with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Moore pled guilty to the charge and proceeded to sentencing. In the time between Moore's guilty plea and his sentencing hearing, the Probation Office prepared his presentence report ("PSR"). In addition to Moore's offense of conviction, the report included two instances of unindicted firearm possession as relevant conduct, increasing his anticipated range of incarceration under the Sentencing Guidelines. The first offense related to a shooting that took place in Toledo on September 19, 2020. Officers recovered two abandoned firearms from the scene of the crime, along with several spent shell casings, and laboratory analysis later tied Moore's DNA to the magazine of one of the weapons, a Smith & Wesson pistol. The second offense, also stemming from the aftermath of a shooting in Toledo, took place on November 27, 2020. There, security footage revealed Moore moving two items, later identified as handguns, from the trunk of a vehicle to bushes outside of a hospital. When officers recovered the firearms, they discovered that both were partially loaded, and one had an extended magazine.

The Probation Office considered these instances to be relevant conduct to Moore's indicted offense, which both increased his base offense level and subjected him to several enhancements. Specifically, the PSR recommended that Moore's base offense level increase from 14, under § 2K2.1(a)(6), to 20, under § 2K2.1(a)(4), considering the extended magazine attached to one of the firearms found on November 27. The PSR also proposed a two-level enhancement under

§ 2K2.1(b)(1)(A), because Moore possessed more than three firearms when counting the unindicted conduct.[1]

Moore objected to the PSR's inclusion of the relevant conduct and made similar arguments before the district court at his sentencing hearing. There, and after considering his renewed arguments, the district court overruled Moore's objections. It found that Moore's prohibited possessions in September and November demonstrated a "systematic pattern" of problematic behavior and constituted relevant conduct to the underlying, indicted offense. DE 35, Sentencing Hr. PageID 217–18. In continuing, the district court noted that Moore's illegal possessions were each linked to a dangerous shooting, which provided further justification for finding that these events were not "isolated instances[.]" *Id.* After ruling on the relevant conduct issue, the district court found Moore's appropriate offense level to be 26—a base level of 20 with a two-level enhancement for the number of firearms and a four-level enhancement for possessing the firearm on December 19 in connection with another felony offense—and, after applying a three-level reduction for acceptance of responsibility, imposed a within-Guidelines sentence of 108 months' imprisonment. *Id.* at 260. Moore appealed, focusing on only the district court's relevant conduct finding and the related enhancement.

II.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019). "Because a district court's

---

[1] The Probation Office also suggested applying a four-level enhancement for possessing the firearm on September 19 in connection with another felony. The district court did apply a four-level in-connection-with enhancement, but as to Moore's possession on December 19, and not to the September 19 incident. We do not address the application of the four-level enhancement because Moore challenges only the district court's finding of relevant conduct and the enhancement that follows.

relevant-conduct determination involves the application of law to facts, we review de novo. The government bears the burden of proving, by a preponderance of the evidence, that another offense constituted relevant conduct." *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018) (citations omitted).

III.

Moore argues that the district court erred in considering the September and November events as relevant conduct to his charged offense. This error, Moore continues, led the district court to improperly calculate his Guidelines range and impose an inappropriate sentence. As a result, he claims that the sentence should be vacated and that his case be remanded for resentencing.

The Sentencing Guidelines permit a district court to alter a defendant's base offense level for unindicted, "relevant conduct." U.S.S.G. § 1B1.3. That language encompasses activity that is "part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). Relevant here, offenses are part of "the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3, cmt. n.5(B)(ii). In determining whether offenses are within the same course of conduct, courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* These factors interact as if on a sliding scale; when one of the factors is absent, a stronger presence of at least one of the others is required. *Id.*; *see also Amerson*, 886 F.3d at 573–78.

Moore's at-issue conduct implicates each factor and supports the district court's relevant conduct finding. To start, there is great similarity between the offense that Moore pled guilty to and his unindicted behavior. Courts require more than a concept-level link to satisfy the similarity factor. *United States v. Bowens*, 938 F.3d 790, 799 (6th Cir. 2019); *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996). In the context of possessing illegal firearms, for instance, the government must submit "characteristics about the possessions that show similarity beyond the act of unlawfully possessing a gun." *Amerson*, 886 F.3d at 578 (citing *United States v. Phillips*, 516 F.3d 479, 485 (6th Cir. 2008)). At the same time, however, a wide variety of characteristics can support a finding of similarity. *See United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016) (noting that commonality between the involved parties and the location of the problematic conduct supported a showing of similarity); *see also Amerson*, 866 F.3d at 577 (suggesting a lack of similarity when the offenses had "no common victims, common accomplices, common purpose, or similar modus operandi").

Here, Moore's illegal possessions share several meaningful similarities. First, each firearm that Moore possessed was a handgun. Second, Moore handled these firearms outside of his house. Finally, and most importantly, Moore's possession of each firearm was tied to violence. That is, officers recovered all four firearms in the aftermath of shootings. With this context, and in considering the entirety of his PSR,[2] the district court attributed Moore's firearms possession to "gang activity," and found the similarity prong satisfied. DE 35, Sentencing Hr., PageID 217–18.

---

[2] The PSR, both in its recitation of his criminal history and in detailing his presentence interview for this offense, highlighted Moore's past gang affiliation. Moore, however, claims that he is no longer associated with any gang. Yet, given Moore's history and the nature of the events surrounding Moore's firearm possessions, the district court did not clearly err in making this finding.

Given the support for the district court's finding, Moore's unindicted conduct was similar in kind to his indicted offense. *See Phillips*, 516 F.3d at 485.

Likewise, Moore's actions satisfied the regularity factor of the relevant conduct analysis. As it sounds, the regularity prong requires the government to show that a defendant committed multiple instances of prohibited behavior beyond the indicted offense. *See Amerson*, 886 F.3d at 574. "[R]egularity is 'completely absent' where the government shows only one other offense" *id.* (quoting *Hill*, 79 F.3d at 1484), meaning "two [total] instances of unlawful gun possession" cannot satisfy the factor and further a finding of relevant conduct, *Bowens*, 938 F.3d at 799. Here, however, in addition to his indicted conduct of the same, Moore twice illegally possessed firearms. And this court has held that two instances of unindicted firearm possession create sufficient regularity for relevant conduct. *Phillips*, 516 F.3d at 484 (holding uncharged gun possessions from August 2002 and March 2006 as relevant conduct to the charged gun possession offense in May 2004). Considering this, Moore's actions satisfy the regularity factor and support a finding of relevant conduct.

Lastly, the two unindicted possessions occurred close in time to Moore's offense of conviction, meeting the temporal proximity requirement for relevant conduct. Moore rightly concedes this point on appeal. Although the Guidelines contain no bright line rule on the matter, this court, and several of our sister circuits, have sustained findings of relevant conduct when the at-issue events occurred within nine months of the indicted offense. *Amerson*, 886 F.3d at 574; *Phillips*, 516 F.3d at 483–84 (collecting cases). Moore clears that window with months to spare. His illegal possessions on September 19 and November 27 occurred within three months of his indicted offense on December 19 and strengthens the case for a relevant conduct application.

In satisfying the similarity, regularity, and temporal factors needed to show a similar course of conduct, the district court did not err in finding Moore's illegal firearm possessions on September 19 and November 27 were relevant conduct to his December 19 offense.

IV.

The judgment of the district court is affirmed.

**CLAY, Circuit Judge, dissenting.** Vincent Moore pleaded guilty to a single instance of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). But the district court found that two other instances of gun possession—which the government never charged and to which Moore never pleaded guilty—constituted relevant conduct for sentencing purposes. Without the improper enhancements based on the two other instances of gun possession, Moore's Sentencing Guidelines range would have been 41–51 months' imprisonment. Instead, Moore was sentenced to 108 months' imprisonment. Because the district court erred in finding this uncharged conduct sufficiently relevant to Moore's offense, I respectfully dissent.

When sentencing criminal defendants, district courts can consider relevant conduct, even conduct not charged by the government, where the conduct is "part of the same course of conduct" as the underlying conviction. U.S.S.G. § 1B1.3(a)(2). To determine whether offenses are part of the same "course of conduct," courts evaluate "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *United States v. Hill*, 79 F.3d 1477, 1482 (quoting U.S.S.G. § 1B1.3, application note 5(B)(ii)). This Court applies a sliding scale approach to consideration of these factors; where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor. *Id.*

Moore's offense of conviction occurred on December 19, 2020, and involved a pistol with 15-round capacity found in the side of the passenger door of a car in which Moore was a passenger. But at sentencing, the district court considered two other instances of gun possession to be relevant conduct: a September 2020 incident where officers recovered two firearms, one of which had Moore's DNA; and a November 2020 incident where surveillance footage revealed Moore concealing two firearms, one of which with a high-capacity magazine, in bushes outside of a hospital. The district court set Moore's base offense level at 20 due to the large capacity magazine

from the November 2020 incident, pursuant to U.S.S.G. § 2K2.1(a)(4)(B). And the district court increased Moore's base offense level by two more points because the offense, when considering the uncharged instances of gun possession, involved three or more firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A).

Contrary to the majority's holding, the government has not met its burden of showing that the September or November possessions were sufficiently similar to Moore's December possession of conviction. First, the majority points to several supposedly "meaningful similarities": 1) each firearm at issue that Moore possessed was a handgun; 2) Moore handled these firearms outside of his house; and 3) Moore's possession of each firearm was tied to violence. Maj. Op. at 5. It is unsurprising that the majority cites no case law to support its claim that any of these factors demonstrate similarity. No binding Sixth Circuit precedent tells us that the type of weapon is at all relevant to the "same course of conduct" analysis. Nor does our case law indicate that handling firearms outside of the home points to similarity. Instead, in *Amerson*, we found a *lack* of similarity due in part to the fact that the possessions took place at different locations. *United States v. Amerson*, 886 F.3d 568, 578 (6th Cir. 2018). That is also true in Moore's case: the three instances of possession (including the offense of conviction) took place in three different locations, all outside the home. And the instances shared "no common victims, common accomplices, common purpose, or similar modus operandi." *Id.* at 577. Under *Amerson*, this points to a lack of similarity.

Further, the majority errs in relying on what it calls "the entirety of [Moore's] PSR" and "its recitation of [Moore's] criminal history" to satisfy the similarity prong. Maj. Op. at 5 & n.2. Assuming that by this the majority means that Moore's conduct is similar because he has an extensive criminal history, this conclusion is legally unsound. It is outside the bounds of this

Court's responsibility to judge a criminal defendant's PSR and criminal history in reviewing a district court's relevant conduct analysis. The relative size of a PSR sheds little light on the regularity, similarity, and temporal proximity of the conduct in question, and those are the sole proper factors to consider when evaluating whether conduct is "relevant" for purposes of sentencing enhancements. U.S.S.G. § 1B1.3, application note 5(B)(ii). To affirm a sentencing enhancement for relevant conduct based on an extensive PSR has significant consequences. First, it runs the risk of district courts considering any prior criminal activity to be "relevant conduct" for sentencing purposes, so long as the PSR is detailed enough. This would render the "same course of conduct" inquiry a nullity and drastically increase prison sentences for individuals who continue to offend. Further, it amounts to double-counting an individual's criminal history, which district courts already consider when setting a Guidelines range. *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) ("[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."). In Moore's case, his criminal history score already caused an increase in his Guidelines range from 46–57 months to 92–115 months (applying the improper sentencing enhancements). Thus not only is there no basis to unjustly cause Moore, and defendants like him, to spend more time in prison, but to do so by emphasizing his criminal history is impermissible.

The majority commits a different error in relying on Moore's purported "gang activity" in holding that the government met its burden on the similarity prong. Unfortunately for the majority, the government failed to raise in its briefing the argument that Moore's possessions all share the characteristic of "gang activity." Our typical approach to forfeited claims is to decline to consider them. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). The majority excuses such a forfeiture—without explanation—in order to find similarity where there is none.

As if considering these arguments was not bad enough, accepting them amounts to considering the conduct at "a level of generality that would render worthless the relevant conduct analysis." *Hill*, 79 F.3d at 1483.

Stripping away the claims that the government failed to raise or that it would be otherwise inappropriate for this Court to consider, these possessions share only a few things in common: they were guns that were possessed illegally by the same person. But this Court requires something more than the fact that both offenses involved illegal firearm possession. *Amerson*, 886 F.3d at 578 ("When we have upheld relevant-conduct determinations involving illegal gun possessions, we have emphasized characteristics about the possessions that show similarity beyond the act of unlawfully possessing a gun."); *cf. United States v. Gales*, 137 F. App'x 875, 878 (6th Cir. 2005) ("It suffices here that the government has shown a compelling similarity between the incidents-by showing a common purpose (selling the firearms) and a similar mode of operation (selling stolen firearms to the same store)-and a brief time interval separating them."); *United States v. Fisher*, 824 F. App'x 347, 359–60 (6th Cir. 2020) ("Moreover, the AK-47 was possessed at the same location—Fisher's residence—as the Bushmaster rifle and the Ruger handgun."). The government therefore has failed to show that the other possessions were sufficiently similar, and the district court errs in inventing similarities out of whole cloth.

As to the regularity prong, the operative number of additional incidents in this case is two: the September possession and the November possession. Two may be a sufficient showing for regularity, but it is a weak one given that regularity is "completely absent" where the government proves only one prior offense. *Hill*, 79 F.3d at 1484; *see also Amerson*, 886 F.3d at 575 (holding that one other offense of conviction is a "complete lack of regularity"). To be sure, this Court has upheld sentences that were enhanced based on only two instances of relevant conduct. But those

cases typically involved stronger showings of the similarity and timing proximity factors than are present in this case. *See, e.g.*, *United States v. Gilbert*, 173 F.3d 974, 978 (6th Cir. 1999) (finding strong evidence of regularity, similarity, and proximity between two instances of relevant conduct and the offense of conviction because the defendant's "consistent pattern" of acquiring, packaging, and distributing crack cocaine had been "essentially continuous" for three years); *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008) (finding two instances of relevant conduct sufficient for regularity where there were "stronger" showings of similarity due to the offenses' common purpose and where defendant indicated that he carried firearms regularly). Therefore the government has provided only the bare minimum showing of regularity.

Third, this Court considers the time interval between the offenses. We have adopted a general approach of upholding "the relevant conduct designation where the offenses were within a nine-month period." *Phillips*, 516 F.3d at 483. The government therefore has met its burden by demonstrating that the incidents occurred over a three-month period. However, due to the sliding scale approach, the government is required "to compensate for the weakness" of one factor by "presenting substantially stronger proof" of others. *Hill*, 79 F.3d at 1484. In *Amerson*, this Court noted that a "several-month gap between illegal possessions," sufficed as some evidence for temporal proximity, but it was not "strong enough timing evidence to overcome a complete lack of regularity and prove that the possessions were part of the same course of conduct." 886 F.3d at 575. For an example of strong enough timing evidence, the Court pointed to cases of contemporaneous or near contemporaneous possessions of firearms. *Id.* at 574–75. But neither Amerson's nor Moore's case involved contemporaneous possession. In this case, while the government did not need to overcome a complete lack of regularity, as it proved not one but two other instances of illegal firearm possession, it still needed strong temporal proximity evidence to

- 12 -

overcome a weak showing of both regularity and similarity—a burden that three possessions in about three months does not surmount.

Therefore, considering only non-forfeited arguments that are supported by our precedent, Moore's September and November instances of possession cannot be considered "relevant conduct" for sentencing purposes. The majority reaches the opposite conclusion by pinch-hitting for the government's forgotten claims and inventing similarities that this Court has not routinely recognized. And the majority ignores the sliding-scale analysis mandated by our precedent and instead appears to consider the factors as boxes to be checked. Today's holding eschews both our case law and the Sentencing Guidelines to render the similarity factor a nullity. The consequence is as clear as it is alarming: the government can add years to a defendant's sentence by merely stating that an individual possessed a gun more than once. I refuse to join in such an abridgement of a criminal defendant's rights.

Without the consideration of Moore's other instances of possession, Moore's proper base offense level would have been 18. A base offense level of 18, combined with Moore's criminal history score of VI would have corresponded to a Guidelines range of 57–71 months' imprisonment. If the district court had applied the three-point decrease for assumption for responsibility, as it did below, his sentencing range would have been 41–51 months' imprisonment. Compared to the original, significantly higher Guidelines range of 92–115 months that the district court calculated and the 108 months' imprisonment that the district court imposed, the erroneous enhancements constitute reversible error. *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) ("When a defendant is sentenced under an incorrect Guidelines range— whether or not the defendant's ultimate sentence falls within the correct range—the error itself

can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.").  Because the majority fails to correct such an error, I respectfully dissent.